IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

OWNERS INSURANCE COMPANY,

                Plaintiff,          Case No. 3:10 CV 116

-vs-

                                MEMORANDUM OPINION

JOHN BARONE, II, et al.,

                Defendant.

KATZ, J.

This matter is before the Court on the parties' Motions for Summary Judgment (Doc. Nos. 31 and 32), their oppositions (Doc. Nos. 33 and 34), and their replies (Doc. Nos. 35 and 36). The Court notes diversity jurisdiction under 28 U.S.C. §1332 and proper venue under 28 U.S.C. §1391. For the reasons stated below, each motion will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff Owners Insurance Company issued a homeowners insurance policy ("the Policy") to Defendant John Barone, II. This policy was in place on July 31, 2008 when Jessica Merritt ("Merritt") was injured in an accident involving a boat Defendant was driving.

In addition to his Ohio residence, Defendant maintains a home in Florida (also covered under the Policy) at which he has kept a string of pleasure boats. (Policy, Doc. No. 1-1 at 6). At the end of June 2008, he contemplated a new boat. To that end, he had Devil's Lake Water Sports ("Devil's Lake") deliver a 20-foot 2008 Mastercraft boat with a 2008 310 horse-power Indmar motor ("the Boat") to his Florida residence. The original June 2008 purchase order[1] indicated that payment would be made by September 1, 2008 and that the purchase price included a set of

---

[1] A September 2008 purchase order amended the transaction to remove a trailer from the transaction.

accessories and transportation to Florida. The list of included accessories did not include a wakeboard.[2]

On July 31, 2008, Defendant was operating the Boat while Merritt rode a wakeboard towed by the Boat. Defendant supplied the wakeboard which he admitted to receiving along with the Boat. Merritt claims that Defendant negligently caused her to fly off the board. She further claims that the wakeboard was defective and thus did not separate from her body, causing injuries. She has since sued Defendant over the accident, alleging negligence regarding the operation of the Boat and the provision of the defective wakeboard and unseaworthiness due to the defectiveness of the wakeboard.

On August 12, 2008, Defendant informed his insurance agent of both the new Boat and the accident involving Merritt (who had by this point informed Defendant that she would seek recovery for her injuries from him). Plaintiff began defending Defendant in Merritt's suit (the "Florida case") under a reservation of right. After that case had proceeded for a bit, Plaintiff brought this suit asking the Court to declare that the Policy does not cover the accident and that there is no further duty to defend. Plaintiff originally named Merritt and Devil's Lake in the suit, as well as Defendant. Merritt defaulted out of the suit and Plaintiff dismissed Devil's Lake to maintain diversity. After Plaintiff filed a motion for summary judgment, Defendant filed his own motion for summary judgment seeking a declaration that the Policy did cover the July 31, 2008 accident.

## II. SUMMARY JUDGMENT STANDARD

---

[2] A wakeboard is a device that performs much the same function as waterskis. A rider is towed behind a boat for amusement.

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)). The party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Ciminillo v. Streicher,* 434 F.3d 461, 464 (6th Cir. 2006); *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071; *Bultema v. United States*, 359 F.3d 379, 382 (6th Cir. 2004) . The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### III. ANALYSIS

As an initial matter, the Court determines that it will apply Ohio law to this dispute over the Policy. Not only do both Plaintiff and Defendant argue for this result, but also Ohio's choice of law principles would agree. *See Wuliger v. Manufacturers Life Ins. Co. (USA)*, 567 F.3d 787, 796 n.5 (6th Cir. 2009) (parties agreement); *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 824 (6th Cir. 1996) (citation omitted) (diversity court applies forums state's choice of law). Applying the Restatement (Second) of the Conflict of Laws, in contract disputes, Ohio courts look at the place of contracting, negotiation, and performance as well as the location of the subject

matter and the domicile of the parties. *Gries Sports Enters., Inc. v. Modell*, 473 N.E.2d 807, 810 (Ohio 1984) (quoting the Restatement (Second) of the Conflict of Laws). Here, Defendant is an Ohio resident, the insurance agent (thus negotiation) was in Ohio, and much of the insured property is in Ohio. Neither Florida (place of the accident and some of Defendant's insured property) nor Michigan (Plaintiff's location) have as much contact with the policy.

In Ohio, "[a]n insurance policy is a contract whose interpretation is a matter of law." *City of Sharonville v. American Employers Ins. Co.*, 846 N.E.2d 833, 836 (Ohio 2006) (citation omitted). Ambiguous terms are "construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988) (citations omitted). The Court must look to see if the contract language is ambiguous before interpreting the contract in the insured's favor. *St. Marys Foundry, Inc. v. Employers Ins. Of Wausau*, 332 F.3d 989, 992-93 (6th Cir. 2003) (citations omitted) (applying Ohio law). The Court must "give the terms of the contract their plain and natural meaning" and "give meaning to every paragraph, clause, phrase, and word." *Id.* (citations omitted). The Court must consider the policy as a whole when interpreting its terms. *Safeco Ins. Co. of America v. White*, 913 N.E.2d 426, 430 (Ohio 2009) (citations omitted). The insurer bears the burden of showing that its interpretation of the policy is the only reasonable interpretation consistent with these principles; it cannot simply show that " its interpretation is more reasonable than the policyholder's." *Andersen v. Highland House Co.*, 757 N.E. 2d 329, 333 (Ohio 2001) (quotation omitted). With these principles in mind, the Court will address coverage for the Boat, coverage for the wakeboard, and any duty to defend.

*A. Coverage for Liability Related to the Boat*

5

The Policy covers both property damage and personal liability. In addition to standard coverage, including specific references to personal liability coverage for boats, the Policy contains two endorsements addressing coverage for boats. In the standard language, Coverage E(1)(a)8 restricts personal liability coverage for boats owned by Defendant to "watercraft" "powered by inboard or inboard-outdrive motor power of 175 horsepower or less" or "powered by one or more outboard motors" with less than 120 combined horsepower or sail boats under 26 feet long. Doc. No. 1-1 at 54. Coverage for Defendant's boat use is similarly restricted for boats he owns and restricted to "**watercraft** not ... available for regular use by any **insured** provided use of the **watercraft** is with reasonable belief of permission to do so" for boats he does not own. Coverage E(1)(a)8 and (b)3) Doc. No. 1-1 at 54 (emphasis in original).

Plaintiff maintains that this is the limit of coverage for Defendant's boats. It ignores the Watercraft Liability Endorsement appended to the Policy, which suspends the motor power restrictions for any "**watercraft** described on the Declarations under 'Watercraft Liability.'" Doc. No. 1-1 at 26. Given the revolving string of boats listed under "Watercraft Liability" in the Declarations, Plaintiff's claim that no 310 horsepower boat could be covered under the Policy is unmerited. However, the Court does not find the Boat listed in the Declarations. Thus, without more, the Boat is not covered under the policy as an owned "watercraft."

Defendant invokes the Boatowners Plus Endorsement, which contains an Automatic Coverage provision. Doc. No. 1-1 at 16-17. Though the Boatowners Plus Endorsement unambiguously refers only to property coverage[3], Defendant would have the Court read the Automatic Coverage provision to automatically substitute the Boat into the Declarations. Even

---

[3] It does cover the *property* of guests, in addition to that of insureds.

though the Automatic Coverage provision refers to the Declarations, it merely speaks of its own coverage, not an actual change to the Declarations. As such, there is no ambiguity enabling a construction favoring coverage: that a replacement causes an automatic substitution to the Declarations, thereby triggering the Watercraft Liability Endorsement and lifting the horsepower restrictions. Instead, the Court reads these provisions to lift the power restrictions only when a new boat is formally added to the Declarations.

This does not end the analysis for the Boat. Though Plaintiff argued for the coverage failure due to ownership, it also acknowledged that Defendant admitted, under Fed. R. Civ. P. 36, that he did not own the Boat at the time of the accident. The parties also argue over the possibility of coverage if Defendant did not own the Boat. Because the result is the same, no coverage, the Court will not analyze if Defendant owned the Boat under Ohio law[4] or what the impact of the admission would have on that analysis.

In considering the situation where Defendant did not own the Boat, the parties mainly dispute whether it was "available for regular use" by the Defendant. Under Ohio law, the term "regular use" is not ambiguous, though it does "require a fact-specific inquiry." *Auto-Owners Ins. Co. v. Merillat*, 854 N.E.2d 513, 519 (Ohio Ct. App. 2006) (citation omitted). Defendant claims that the "fact-specific inquiry" creates a question of material fact (in the context of the same portions of the Policy but for the wakeboard). Doc. No. 36 at 8. However, Defendant does not name one fact under dispute. Actually, the parties dispute little of what occurred or when (other

---

[4] Defendant tries to argue that the inconsistent theories create a factual dispute over the ownership of the Boat. Even if ownership was material, it would not be a fact but a legal conclusion under Ohio law. Defendant does not claim that the parties dispute the facts which would underlie that determination.

7

than ownership, which happens to be immaterial), just the meaning of what occurred. In other words, a "fact-specific inquiry" with no disputed facts does not create a question of material fact preventing summary judgment.

The Ohio Supreme Court has determined that "regular use" means "use that is frequent, steady, constant or systematic." *Sanderson v. Ohio Edison Co.*, 635 N.E.2d 19, 25 (Ohio 1994) (citations omitted). Further, a vehicle is not available for "regular use" of a policy holder when someone other than the policy holder maintains "sole dominion and control over it." *Thompson v. Preferred Risk Mutual Ins.*, 513 N.E.2d 733, 736 (Ohio 1987). Defendant admitted that the Boat was available for his use, kept at his Florida home, and that Devil's Lake not only gave him permission to use the Boat, but "sole authority to grant permission to others to operate" it. Doc. No. 33-1 at 7-8. Further, though the fact of when the Boat was delivered is unclear (and immaterial), Defendant and Devil's Lake clearly contemplates him possessing the Boat in Florida for at least one month; the accident occurred one month before payment was due and obviously occurred after the delivery of the Boat. Clearly Defendant had complete control over the Boat for a period anticipated to last at least one month while he tested it. The sheer length of time involved, combined with delivery from Michigan to Florida, prevents any comparison to a car test drive.[5]

Defendant attempts to compare the situation to that of *Auto Owners Insurance Co. v. Barnickel*, 930 N.E.2d 364 (Ohio Ct. App. 2010). There, the Ohio Court of Appeals found a material dispute over "regular use" despite a long period of complete control. *Id.* at 371-72.

---

[5] It is not even clear if Defendant had to give Devil's Lake his driver's license.

8

However, that court acknowledged that it dealt with a different situation than the one before this Court. *Id*. In *Barnickel*, the claimant asserted that he only had possession of the vehicle in question in order to repair it. *Id*. at 365. The Ohio Court of Appeals found that if the claimant had only been provided the motorcycle in order to repair it, such possession did not satisfy the *Thompson* and *Sanderson* tests, despite a long period of possession. *Barnickel*, 930 N.E.2d at 372. Thus, the reasoning behind *Barnickel* does not apply to Defendant's possession of the Boat - *Barnickel* did not hold that a long period for <u>trial</u> use was not "regular use," but that the possession involved could have been for <u>repair for hire</u>. *Id.*

Because Defendant had complete control over the Boat for a substantial period of time, the Court finds that it was "available" for his "regular use." As noted above, the Boat also would not have been covered if Defendant had owned the Boat. Therefore, the Policy did not cover personal liability arising from Defendant's use of the Boat on July 31, 2008.

*B. Coverage for Liability Related to the Wakeboard*

While the determination of coverage for the Boat involved little by way of ambiguity, the determination of coverage for the wakeboard requires analysis of multiple ambiguous provisions. Defendant argues that the coverage for the wakeboard does not depend upon whether a wakeboard is "watercraft" under the policy. Without addressing any potential ambiguity over whether a wakeboard may be covered under Coverage E(1)(a)8),[6] the Court determines that the wakeboard is not a "watercraft" as defined by the policy and thus comes under the general language in Coverage E a(1).

---

[6] The Policy unambiguously limits coverage for undeclared "watercraft" to those powered by inboard or outboard motors with certain power restrictions and sailboats. "Powered" is not defined in the Policy.

9

The Policy defines "watercraft" as "a conveyance capable of being used as a means of transportation on water." Since none of the words in the definition of "watercraft" are defined elsewhere, the Court must give the words their plain meaning. *St. Marys*, 332 F.3d at 992. While a wakeboard can be used for "transportation on water," it is not clear if a wakeboard is a conveyance. Webster's Third New International Dictionary defines a "conveyance" as a "means of carrying or transporting something" or a vehicle. The Court notes that this could restrict "conveyance" to things like boats and cars, which can move themselves, as opposed to things like trailers or waterskis, which do not transport by themselves, but rely on towing by a vehicle to move something. A wakeboard, like waterskis, relies on towing by a vehicle. Thus, one reasonable interpretation of the Policy excludes the wakeboard from the definition of "watercraft."

The parties disagree over the extent of coverage for personal liability for anything other than aircraft, motor vehicles, recreational vehicles and watercraft under the Policy. Coverage E, governing personal liability, states "**[w]e** will pay all sums any **insured** becomes legally obligated to pay as damages because of or arising out of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies. However, with respect to any **aircraft, motor vehicles, recreational vehicles or watercraft**," the Policy proceeds to lists certain conditions. Doc. No. 1-1 at 54 (emphasis in original). The parties dispute the effect of the phrase "to which this coverage applies" and the word "However" as used in Coverage E. Plaintiff asserts that Coverage E only applies to aircraft, motor vehicles, recreational vehicles and watercraft. Defendant counters by noting that "to which this coverage applies" has no definition within Coverage E. He further notes that Plaintiff's interpretation makes the word "However" surplusage.

10

Though Plaintiff may have successfully asserted that its interpretation is "more reasonable," it has failed to show that Defendant's interpretation is unreasonable. Plaintiff would have the Court read "to which this coverage applies" as referring to only aircraft, motor vehicles, recreational vehicles and watercraft. Not only is this not the only way those words can be reasonably interpreted, but such a reading would eliminate any content of coverage prior to the word "However." This would render the modifying word "However" surplus, removing any meaning. Ohio law forbids an interpretation which gives any word in the contract no meaning. *St. Marys*, 332 F.3d at 992.

Defendant asserts that "to which this coverage applies" refers to the whole Policy, except (due to "However" and the exclusions) where it says otherwise. In other words, unless the Policy says otherwise, Defendant is covered for any personal liability arising from property covered for property loss. The Court finds that the Policy permits this as a reasonable interpretation because Coverage E contains no definition of "to which this coverage applies."[7] Thus, the Policy would cover personal liability arising from any property covered for loss that is not otherwise excluded. Because any "watercraft" would be subject to such restrictions, the Court discerns that resolving ambiguity in Defendant's favor forces the determination that the wakeboard is not "watercraft" under the Policy. As such, Defendant would be covered for personal liability to Merritt for the July 31, 2008 accident if the wakeboard was his personal property at the time.

Plaintiff asserts that not only did Defendant not own the wakeboard at the time of the accident, but may not argue that he did own it. Or, more accurately, Plaintiff's only argument that

---

[7] Defendant also asserts that this interpretation provides personal liability coverage for undeclared boats, but the Court has already addressed the unambiguous way the Policy addresses such liability.

11

Defendant did not own the wakeboard is that he may not assert that he did. Plaintiff starts by noting Defendant's admission that he did not own the Boat at the time of the accident. It next points to Defendant's admission that the wakeboard at issue came with the Boat.[8] Plaintiff states that Defendant's claim to own the wakeboard is inadmissible after he "specifically admitted that he did not own" it and has moved (as part of its reply (Doc. No. 35)) for the Court to disregard Defendant's affidavit containing that claim. Plaintiff might have a point if a person could not receive two items in the same transaction and only own one of them. However, a free gift during a test period, regardless of the decision to buy is a common marketing technique. Further, the purchase order notes accessories provided with the Boat, but omits the wakeboard. Thus, even if the two items arrived together, Plaintiff has not shown how ownership of one is inextricably linked to ownership of the other. As such, Plaintiff has not shown that Defendant's affidavit explicitly claiming ownership of the wakeboard contradicts anything he has previously said and so the Court denies Plaintiff's motion to disregard Defendant's affidavit.

  Because Plaintiff has not presented any evidence that Defendant did not own the wakeboard, only the rejected argument that he could not claim that he did own it, and Defendant has submitted his affidavit claiming ownership, the Court finds that Defendant owned the wakeboard at the time of the accident.[9] Because the Policy must be construed as covering

---

[8]

In addition to the admission, Plaintiff points to Defendant's deposition in the Florida case stating that the wakeboard "came with the boat." Defendant objects to the evidentiary value of the statement. Even though this issue is mooted by Defendant's admission in this case that the wakeboard was supplied "with the boat" (Doc. No. 33-1 at 5), the Court notes the potential problem of Plaintiff using a deposition against Defendant from a case where Plaintiff was providing representation to Defendant during the deposition.

[9]

(continued...)

personal liability for bodily injuries[10] arising from Defendant's personal property and the wakeboard was his personal property at the time of the accident, the Court finds that the Policy provides coverage for any liability arising from the use or defectiveness of the wakeboard.

*C. Duty to Defend*

Coverage E includes a pledge to defend against "any claim or **suit** for damages covered by this policy." Doc. No. 1-1 at 55 (emphasis in original). In Ohio, "[o]nce an insurer must defend one claim within a complaint, it must defend the insured on all the other claims within the complaint, even if they bear no relation to the insurance-policy coverage." *Sharonville*, 846 N.E.2d at 837 (citing *Preferred Mut. Ins. Co. v. Thompson*, 491 N.E.2d 688, 690 (Ohio 1986)). Because the Policy covers any liability related to the wakeboard, Plaintiff must provide Defendant with a defense for the whole of the Florida case.

## IV. CONCLUSION

For the reasons discussed herein, Plaintiff's motion for summary judgment (Doc. No. 31) is hereby granted in part: the Court finds that Plaintiff has no duty to indemnify Defendant for Merritt's claims arising out of the July 31, 2008 accident to the extent those claims arise from Defendant's operation of the Boat; the motion is denied in all other respects. Defendant's motion for summary judgment (Doc. No. 32) is hereby granted in part: the Court finds that Plaintiff has a

---

[9](...continued)
The Court's conclusion is bolstered by Ohio case law stating that O.R.C. §1302.42 controls ownership for insurance purposes. *Smith v. Nationwide Mut. Ins. Co.*, 524 N.E.2d 507, 509 (Ohio 1988). The statute states that ownership passes with deliver by the seller, absent explicit agreement to the contrary. O.R.C. §1302.42(B).

[10] Both "**bodily injury**" and **"occurrence"** are defined in the Policy, though Plaintiff does not dispute that they apply to the Florida case.

13

duty to defend Defendant from all of Merritt's claims arising out of the July 31, 2008 accident and must indemnify Defendant for any damages arising from the use and defectiveness of the wakeboard; the motion is denied in all other respects.

IT IS SO ORDERED.

                                                         s/ *David A. Katz*
                                                     DAVID A. KATZ
                                                     U. S. DISTRICT JUDGE